IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| In re: Gold King Mine Release in San Juan County, Colorado on August 5, 2015 | |
| This Document Relates to: *All Cases* | No. 1:18-md-02824-WJ |

**EXPERT REBUTTAL REPORT OF ROBIN CANTOR, PH.D.**

*[signature: Rob Cantor]*

Robin Cantor, Ph.D.
September 10, 2021



Exhibit 1168

50. Finally, Dr. Jones and Mr. Unsworth opined that total program costs of approximately $81 million identified in the paragraph above "are not unreasonable given the level of harm due to the Spill." Using the total population of the Navajo Nation of approximately 332,000, Dr. Jones and Mr. Unsworth calculated a per-capita cost of $240 for enrolled members; and using a total of 50,600 people living in the Navajo Nation census tracts adjacent to the San Juan River, Dr. Jones and Mr. Unsworth calculated a per-capita cost for members living near the San Juan River of $1,600.[86]

### B.  *Absent the Showing of Any Relationship between the Impacts Asserted and the Restorative Actions Proposed, the Jones and Unsworth Report Is Speculative and Unreliable.*

#### 1. Dr. Jones and Mr. Unsworth Failed to Measure Economic Losses.

51. Despite their suggesting a relationship between the environmental and cultural impacts of the event and the restorative programs, Dr. Jones and Mr. Unsworth failed to provide any methodologies or evidence to establish the level of the impacts caused by the event or economic losses. Their analysis of the impacts failed to address whether the costs of the programs would be commensurate with economic losses, if any. They also failed to address how the specific programs they identify would ameliorate harms that they do not quantify in any equivalent amount. Even for impacts routinely addressed by economic experts, such as loss of use and enjoyment of lands and reduced access to healthy foods, they failed to assess a single dollar of loss using any reliable economic method reviewed below.

52. Instead, Dr. Jones and Mr. Unsworth improperly assumed that the costs of their proposed projects are commensurate with the economic losses that they failed to quantify. Their report is silent regarding any quantitative relationship between the environmental and cultural impacts of the GKM event and the restorative actions they identified.[87] These relationships must be established because compensatory restoration projects only approximate the value of lost economic services caused by environmental incidents. As an approximation, restoration costs can incorrectly support projects that far outweigh the value of the lost services.[88] The economics

---

[86] Jones and Unsworth Report, p. 40.

[87] Paradoxically, among the compensatory actions identified by Dr. Jones and Mr. Unsworth, most if not all of them are more appropriately considered response actions under CERCLA, 42 U.S. Code §§ 9601 et. seq. (actions to address threats to human health and the environment) and/or Natural Resource Damages (NRD), 42 U.S. Code § 107(f) (damages for injury to, destruction of, or loss of natural resources), however, Dr. Jones and Mr. Unsworth failed completely to show any attempt to comply with economic predicates of either of these programs, *i.e.*, an analysis of cost effectiveness in the case of response actions as required under 40 CFR § 300.430, or in the case of NRD, an assessment of injury quantification as required under 43 CFR § 11.70.

[88] *See, e.g.,* U.S. Environmental Protection Agency (EPA), Science Advisory Board. *Valuing the Protection of Ecological Systems and Services: A Report of the EPA Science Advisory Board,* May 2009 ("U.S. EPA SAB Report"), p. 52.

