**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

IN RE: GOLD KING MINE RELEASE
IN SAN JUAN COUNTY, COLORADO,
ON AUGUST 5, 2015

No. 1:18-md-02824-WJ

*This Document Relates to:* No. 16-cv-931-WJ-LF

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART WESTON SOLUTIONS, INC.'S MOTION FOR SUMMARY JUDGMENT TO DISMISS THE NAVAJO NATION'S TORT DAMAGE CLAIMS AS PREEMPTED BY CERCLA**

**THIS MATTER** comes before the Court on Weston Solutions, Inc.'s Motion for Summary Judgment to Dismiss the Navajo Nation's Tort Damage Claims as Preempted, Doc. 1478, filed March 7, 2022 ("Motion"); Environmental Restoration, LLC's Notice of Joinder in Weston's Motion, Doc. 1497, filed March 7, 2022.

The two issues addressed by Weston's Motion and the Navajo Nation's Response are: (i) whether the Comprehensive Environmental Response, Compensation and Liability Act's ("CERCLA") limitation on the use of natural resource damages applies to the Navajo Nation; and (ii) whether the Navajo Nation's requests for restorative damages are preempted by CERCLA's natural resource damages scheme. The Court concludes that CERCLA's limitation on the use of natural resource damages applies to the Navajo Nation and that Weston has not shown that the Navajo Nation's restorative damages claims are preempted by CERCLA's natural resource damages scheme.

**CERCLA's Limitation on Natural Resource Damages**

Because the Parties' arguments refer to both the United States Statutes at Large and the United States Code, the Court begins by briefly reviewing the evidentiary value of both.

**The United States Statutes at Large and the United States Code**

The United States Statutes at Large, which is compiled and published by the Archivist of the United States, "contain[s] all the laws ... enacted during each regular session of Congress" and is "legal evidence of laws." 1 U.S.C. § 112. The United States Code is only "prima facie" evidence of the laws of the United States; only those titles of the United States Code that "have been enacted into positive law" are "legal evidence" of the law. 1 U.S.C. § 204(a). "[T]he very meaning of 'prima facie' is that the Code cannot prevail over the Statutes at Large when the two are inconsistent." *United States v. Welden*, 377 U.S. 95, 98 n.4 (1964) (quoting *Stephan v. United States*, 319 U.S. 423, 426 (1943); *U.S. Nat. Bank of Oregon v. Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 448 (1993) ("Though the appearance of a provision in the current edition of the United States Code is 'prima facie' evidence that the provision has the force of law, 1 U.S.C. § 204(a), it is the Statutes at Large that provides the 'legal evidence of laws,' § 112").

**CERCLA**

CERCLA Section 107(f), which concerns recovery and use of natural resource damages, initially did not permit Tribes to recover natural resource damages:

> In the case of an injury to, destruction of, or loss of natural resources under subparagraph (C) of subsection (a) <u>liability shall be to the United States Government and to any State</u> for natural resources within the State or belonging to, managed by, controlled by, or appertaining to such State ... The President, or the authorized representative of any State, shall act on behalf of the public as trustee of such natural resources to recover for such damages. Sums recovered shall be available for use to restore, rehabilitate, or acquire the equivalent of such natural resources <u>by the appropriate agencies of the Federal Government or the State government</u>, but the measure of such damages shall not be limited by the sums which can be used to restore or replace such resources....

Public Law 96-510, 94 Stat. 2767 (1980) (emphasis added).

Two sections of the Superfund Amendments and Re-Authorization Act of 1986 ("SARA"), SARA Section 107(d)(2) and SARA Section 207(c), amended CERCLA Section 107(f).

<u>SARA Section 107(d)(2)</u>

CERCLA Section 107(f), as amended by SARA Section 107(d)(2),[1] reads:

> In the case of an injury to, destruction of, or loss of natural resources under subparagraph (C) of subsection (a) liability shall be to *the United States Government and to any State* for natural resources within the State or belonging to, managed by, controlled by, or appertaining to such State ... The President, or the authorized representative of any State, shall act on behalf of the public as trustee of such natural resources to recover for such damages. *Sums recovered by the United States Government* as trustee under this subsection shall be retained by the trustee, without further appropriation, for use only to restore, replace, or acquire the equivalent of such natural resources. *Sums recovered by a State* as trustee under this subsection shall be available for use only to restore, replace, or acquire the equivalent of such natural resources by the State. The measure of damages in any action under subparagraph (C) of subsection (a) shall not be limited by the sums which can be used to restore or replace such resources. There shall be no double recovery under this Act for natural resource damages, including the costs of damage assessment or restoration, rehabilitation, or acquisition for the same release and natural resource....

CERCLA Section 107(f) as amended by SARA Section 107(d)(2) (amendment underlined) (emphasis added).

CERCLA Section 107(f), as amended by SARA Section 107(d)(2), limits the use of funds recovered by the United States and a State to restore, replace, or acquire the equivalent of the natural resources damaged. CERCLA Section 107(f), as amended by SARA Section 107(d)(2),

---

[1] SARA Section 107(d)(2) states:

> USE OF RECOVERED FUNDS. — Section 107(f)(1) of CERCLA (as designated by paragraph (1) of this subsection) is amended by striking out the third sentence and inserting in lieu thereof the following: "Sums recovered by the United States Government as trustee under this subsection shall be retained by the trustee, without further appropriation, for use only to restore, replace, or acquire the equivalent of such natural resources. Sums recovered by a State as trustee under this subsection shall be available for use only to restore, replace, or acquire the equivalent of such natural resources by the State. The measure of damages in any action under subparagraph (C) of subsection (a) shall not be limited by the sums which can be used to restore or replace such resources. There shall be no double recovery under this Act for natural resource damages, including the costs of damage assessment or restoration, rehabilitation, or acquisition for the same release and natural resource".

SARA Pub. L. No. 99-499, 100 Stat. 1613 (1986) (emphasis added).

does not limit the use of funds recovered by a Tribe, but it also does not authorize Tribes to recover natural resource damages.

SARA Section 207(c)

SARA Section 207(c)[2] amended CERCLA Section 107(f) to permit Tribes to recover natural resource damages:

> In the case of an injury to, destruction of, or loss of natural resources under subparagraph (C) of subsection (a) liability shall be to the United States Government and to any State for natural resources within the State or belonging to, managed by, controlled by, or appertaining to such State and to any Indian tribe for natural resources belonging to, managed by, controlled by, or appertaining to such tribe, or held in trust for the benefit of such tribe, or belonging to a member of such tribe if such resources are subject to a trust restriction on alienation: Provided, however, That no liability to the United States or State or Indian tribe shall be imposed under subparagraph (C) of subsection (a), where the party sought to be charged has demonstrated that the damages to natural resources complained of were specifically identified as an irreversible and irretrievable commitment of natural resources in an environment impact statement, or other comparable environment analysis, and the decision to grant a permit or license authorizes such commitment

[2] SARA Section 207(c) states:

> LIABILITY. — Section 107 of CERCLA is amended as follows:
> ....
>
> (2) In subsection (f):
>
> (A) Insert after "State" the third time that word appears the following: "and to any Indian tribe for natural resources belonging to, managed by, controlled by, or appertaining to such tribe, or held in trust for the benefit of such tribe, or belonging to a member of such tribe if such resources are subject to a trust restriction on alienation".
>
> (B) Insert "or Indian tribe" after "State" the fourth time that word appears.
>
> (C) Add before the period at the end of the first sentence the following: ", so long as, in the case of damages to an Indian tribe occurring pursuant to a Federal permit or license, the issuance of that permit or license was not inconsistent with the fiduciary duty of the United States with respect to such Indian tribe".
>
> (D) Insert "or the Indian tribe" after "State government".
> ....

> of natural resources, and the facility or project was otherwise operating within the terms of its permit or license, so long as, in the case of damages to an Indian tribe occurring pursuant to a Federal permit or license, the issuance of that permit or license was not inconsistent with the fiduciary duty of the United States with respect to such Indian tribe. The President, or the authorized representative of any State, shall act on behalf of the public as trustee of such natural resources to recover for such damages. Sums recovered shall be available for use to restore, rehabilitate, or acquire the equivalent of such natural resources by the appropriate agencies of the Federal Government or the State government or the Indian tribe, but the measure of such damages shall not be limited by the sums which can be used to restore or replace such resources. There shall be no recovery under the authority of subparagraph (C) of subsection (a) where such damages and the release of a hazardous substance from which such damages resulted have occurred wholly before the enactment of this Act.

CERCLA Section 107(f) as amended by SARA Section 207(c) (amendments underlined).

CERCLA Section 107(f), as amended by SARA Section 207(c), authorizes Indian tribes to recover natural resource damages and limits the use of those recovered sums to restore, rehabilitate, or acquire the equivalent of the damaged natural resources.

**Conclusion**

The Court concludes that the limitations on the use of CERCLA natural resource damages apply to Indian tribes.

The Navajo Nation argues that:

(i) the plain language of Section 107(f)(1), as codified at 42 U.S.C.A. § 9607(f)(1),[3] places limits on the use of damages by the United States and States but does not place limits on

---

[3] CERCLA Section 107(f)(1), as codified at 42 U.S.C.A. § 9607(f)(1), provides:

> In the case of an injury to, destruction of, or loss of natural resources under subparagraph (C) of subsection (a) liability shall be to the United States Government and to any State for natural resources within the State or belonging to, managed by, controlled by, or appertaining to such State and to any Indian tribe for natural resources belonging to, managed by, controlled by, or appertaining to such tribe, or held in trust for the benefit of such tribe, or belonging to a member of such tribe if such resources are subject to a trust restriction on alienation .... *Sums recovered by the United States Government as trustee under this subsection shall be retained by the trustee, without further appropriation, for use only to restore,*

the use of damages by Indian tribes because it excludes references to Indian tribes. *See* Response at 17.

(ii) "the plain *enacted* text of SARA itself states that 'an Indian tribe shall be afforded substantially the same treatment as a State with respect to' Sections 103, 104, and 105, *but does not mention Section 107*." Response at 19 (emphasis in original).

(iii) "even if there *were* any ambiguity in CERCLA § 107(f)(1), the Indian canon of construction dictates that such ambiguity be construed in favor of Indian tribes, not against them." Response at 20 (emphasis in original). The Navajo Nation concludes stating "Where the plain text, common sense, and the Indian canon of construction all weigh heavily against treating Indian tribes identically to the United States and State governments, this Court should not take up Weston's invitation to rewrite the statute by 'inserting language [about Indian tribes] that is not there." Response at 21.

The Navajo Nation's argument that the plain language of the statute places limits on the use of damages by the United States and States but does not place limits on the use of damages by Indian tribes because it excludes references to Indian tribes, and that the Court should not insert language about Indian tribes that is not there, is based on the statute as codified at 42 U.S.C.A. § 107(f)(1). The codified statute is only prima facie evidence of the law. The statute contained in

---

> *replace, or acquire the equivalent of such natural resources. Sums recovered by a* State *as trustee under this subsection shall be available for use only to restore, replace, or acquire the equivalent of such natural resources by the State.* The measure of damages in any action under subparagraph (C) of subsection (a) shall not be limited by the sums which can be used to restore or replace such resources. There shall be no double recovery under this chapter for natural resource damages, including the costs of damage assessment or restoration, rehabilitation, or acquisition for the same release and natural resource....

42 U.S.C.A. § 9607(f)(1) (emphasis added).

the United States Statutes at Large, which is legal evidence of the law, plainly states: "Sums recovered shall be available for use to restore, rehabilitate, or acquire the equivalent of such natural resources by the appropriate agencies of the Federal Government or the State government <u>or the Indian tribe</u>." CERCLA Section 107(f) as amended by SARA Section 207(c) (amendment underlined). The version of the statute codified in the United States Code is inconsistent with the version in the United States Statutes at Large because the codified version does not contain the language in the Statutes at Large which places limits on the use of damages by Indian tribes. "[T]he Code cannot prevail over the Statutes at Large when the two are inconsistent." *United States v. Welden*, 377 U.S. 95, 98 n.4 (1964) (quoting *Stephan v. United States*, 319 U.S. 423, 426 (1943)

**<u>The Navajo Nation's Requests for Tort Damages</u>**

Weston argues that "CERCLA preempts tort damages that attempt 'to achieve something other than the restoration, replacement, or acquisition of the equivalent of a contaminated natural resource.'" Motion at 3 (quoting *New Mexico v. General Elec. Co.*, 467 F.3d 1223, 1247 (10th Cir. 2006)). Weston states that the Navajo Nation, in expert discovery, has identified tort damages totaling over $80 million with the "stated purpose of this request is to restore the confidence of its members in the San Juan River as a natural resource:"

> The restorative actions comprise ten programs that fall into four categories: (1) $17,382,416 for Environmental Impact Restorative Programs, which includes a long-term monitoring plan for the San Juan River, an agricultural assessment plan, a real-time monitoring effort, a community involvement and education on environmental monitoring program, and a scientific support team; (2) $54,124,552 for a Water Surety Program to construct a 11,122 acre-feet reservoir for irrigation needs in the event of "high-flow or catastrophic events;" (3) $8,358,011 for Health Impacts Restorative Programs, including a continued health assessment program and community mental health support; and (4) $2,649,561 for a Cultural Preservation program. *Id.* at 30. The total cost of the restorative actions is $80,787,511. *Id.*

Motion at 3-5.

CERCLA imposes liability on potentially responsible parties [PRPs] and allows for the recovery of damages for injury to natural resources.

> CERCLA is best known as setting forth a comprehensive mechanism to cleanup hazardous waste sites under a restoration-based approach. *See United States v. Bestfoods,* 524 U.S. 51, 55, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998). CERCLA's principle aims are to effectuate the cleanup of hazardous waste sites and impose cleanup costs on responsible parties. *See Meghrig v. KFC Western, Inc.,* 516 U.S. 479, 483, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996). Less well known but increasingly important is CERCLA's comprehensive damage scheme which addresses damage assessment for natural resource injury, damage recovery for such injury, and use of such recovery. *See generally* Kevin R. Murray, Steven J. McCardell, & Jonathan R. Schofield, *Natural Resource Damage Trustees: Whose Side Are They Really On?,* 5 Envtl. Law. 407 (1999). As we have seen, CERCLA, at the behest of federal and state NRTs [Natural Resource Trustee], imposes liability upon PRPs not only for cleanup costs, but also for "damages for injury to, destruction of, or loss of natural resources," including the reasonable costs of assessing such damages. 42 U.S.C. § 9607(a)(4)(c). While damages recovered under CERCLA are "available for use only to restore, replace, or acquire the equivalent of such natural resources by the State," damages are not limited, "by the sums which can be used to restore or replace such resource." *Id.* § 9607(f)(1).

*New Mexico v. General Elec. Co.*, 467 F.3d 1223, 1244-45 (10th Cir. 2006) (stating that damages are not limited to the amount required to restore or replace the resource because "*the total amount of damages includes the costs of restoration and the value of all the lost uses of the damaged resources ... from the time of the release up to the time of restoration.* Since the damages contemplated by CERCLA include both, the total amount of damages recoverable would exceed the restoration costs alone").

The Tenth Circuit has held "CERCLA's comprehensive NRD scheme preempts any state remedy designed to achieve something other than the restoration, replacement, or acquisition of the equivalent of a contaminated natural resource." *New Mexico v. General Elec. Co.*, 467 F.3d at 1247. "[A]n unrestricted award of money damage [pursuant to a natural resources damages claim] cannot withstand CERCLA's comprehensive NRD scheme ... [because it] seriously disrupts CERCLA's principle aim of cleaning up hazardous waste:"

> hazardous waste sites need never be cleaned up as long as PRPs are willing or required to tender money damages to a state as trustee. Similarly, PRPs conceivably might be liable for double recovery where a state's successful state law claim for money damages precedes an EPA-ordered cleanup. Finally, in a case where an NRD claim is premised upon both CERCLA and state law, a portion of the recovery if earmarked for the state law claims could be used for something other (for example, attorney fees) than to restore or replace the injured resource. The remainder of the NRD recovery, earmarked for the CERCLA claim, would then be insufficient to restore or replace such resource. Clearly, permitting the State to use an NRD recovery, which it would hold in trust, for some purpose other than to "restore, replace, or acquire the equivalent of" the injured groundwater would undercut Congress's policy objectives in enacting 42 U.S.C. § 9607(f)(1). *See Ouellette,* 479 U.S. at 494, 107 S.Ct. 805 ("A state law is also preempted if it interferes with the methods by which the federal statute was designed to reach [its] goals.").

*New Mexico v. General Elec. Co.*, 467 F.3d at 1248.

Although CERCLA sets forth a comprehensive mechanism to clean up hazardous waste sites, "Congress did not intend CERCLA to completely preempt state laws related to hazardous waste contamination." *New Mexico v. General Elec. Co.*, 467 F.3d at 1244.

> CERCLA's saving clauses (as well as other CERCLA provisions) undoubtedly preserve a quantum of state legislative and common law actions and remedies related to the release and cleanup of hazardous waste ... the principle purpose of the saving clause located at 42 U.S.C. § 9652(d)[4] "is to preserve to victims of toxic waste the other remedies they may have under federal or state law." *PMC, Inc. v. Sherwin–Williams Co.,* 151 F.3d 610, 617 (7th Cir.1998) (Posner, J.).

---

[4] 42 U.S.C. § 9652(d) states:

> Nothing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants. The provisions of this chapter shall not be considered, interpreted, or construed in any way as reflecting a determination, in part or whole, of policy regarding the inapplicability of strict liability, or strict liability doctrines, to activities relating to hazardous substances, pollutants, or contaminants or other such activities.

*New Mexico v. General Elec. Co.*, 467 F.3d at 1246, 1247-48 n.36 (indicating that tort theories of recovery may not be completely preempted for injuries that are "*separate and apart* from injury to the [resource]").

To determine whether CERCLA preempts a claim:

> we ask whether that claim, or any portion thereof, stands as an obstacle to the accomplishment of congressional objectives as encompassed in CERCLA. *See United States v. City and County of Denver,* 100 F.3d 1509, 1512 (10th Cir.1996); *see also Rose v. Arkansas State Police,* 479 U.S. 1, 3, 107 S.Ct. 334, 93 L.Ed.2d 183 (1986) (acknowledging Article IV's Supremacy Clause "invalidates all state laws that conflict or interfere with an Act of Congress"); *Wyoming v. United States,* 279 F.3d 1214, 1234 (10th Cir.2002) (recognizing "[t]he Supreme Court has repeatedly declined to give broad effect to saving clauses where doing so would upset the careful regulatory scheme established by federal law") (citing *Geier v. American Honda Motor Co.,* 529 U.S. 861, 871–72, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000)).

*New Mexico v. General Elec. Co.*, 467 F.3d at 1244; *Choate v. Champion Home Builders Co.*, 222 F.3d 788, 792, 796 (10th Cir. 2000) ("Conflict preemption includes both situations ["express preemption" and "occupation of the field preemption] in which 'it is impossible for a private party to comply with both state and federal requirements' and situations in which state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress;'" "Conflict preemption requires that the state or local action be a material impediment to the federal action, or thwart[ ] the federal policy in a material way").

Weston states:

> In this case, the Navajo Nation's claims arise, fundamentally, from an alleged injury to natural resources held in trust by the tribe for the benefit of its members. It does not seek any recovery for lost or damaged real or personal property owned by the Nation; nor does it seek any recovery for personal injury. *See* UMF [Undisputed Material Fact] 1. It alleges, instead, that the Defendants in this action "poisoned the San Juan River." Dkt. 214, ¶ 3. On that basis, it seeks restoration of the "Nation's natural resources" on its own behalf and *parens patriae* on behalf of the Navajo people. *See id.*, ¶¶ 11-12. The Navajo Nation's tort damages are nominally directed at restoring confidence in the tribes' natural resources. UMF 3. At root, these are natural resource damages claims premised on the alleged release of contaminants affecting the San Juan River. UMF 5.

Motion at 20. Weston contends that "[t]he Navajo Nation seeks through tort to recover natural resource damages without the restrictions—regarding the disposition of a money award, the process for identifying the injury, or standards for judging appropriate restorative programs—that CERCLA and its implementing regulations require" and that "CERCLA, rather than tort, provides the Navajo Nation a viable and complete remedy to receive compensation for the repair or replacement of any natural resources that it can prove were damaged." Motion at 21, 23.

The Court denies Weston's Motion to the extent that it seeks a judgment that CERCLA preempts the Navajo Nation's restorative damages claims.

Weston has not shown that the restorative programs damages claims are natural resource damages claims the recovery of which would be subject to the restriction that they be used only to restore, replace or acquire the equivalent of the damaged resource. *See New Mexico v. General Elec. Co.*, 467 F.3d at 1248 ("Clearly, permitting the State to use an NRD recovery, which it would hold in trust, for some purpose other than to 'restore, replace, or acquire the equivalent of' the injured groundwater would undercut Congress's policy objectives in enacting 42 U.S.C. § 9607(f)(1)"). Weston's Motion "argued that the [Navajo Nation's] tort damage claims are preempted under [CERCLA's natural resources damages use restrictions] standard because the [Navajo Nation] seeks unrestricted monetary damages to compensate it for natural resource damages." Reply at 11. Weston characterizes the Navajo Nation's restorative damages claims as "natural resource damage" claims, however Weston also states "[t]he Navajo Nation has not yet filed a claim for natural resource damages." Motion at 23 n.3. The evidence Weston cites in support of its Motion shows that the restorative programs seek to restore confidence in the resource and that the Navajo Nation does not seek to restore, replace or acquire the equivalent of the damaged resource.

Because Weston has not addressed whether the Navajo Nation's restorative damages claims pursuant to other remedies under state law are preempted, the Court denies Weston's Motion to the extent that it seeks a judgment that the Navajo Nation's restorative damages claims are preempted by CERCLA. CERCLA does not completely preempt all remedies available under state law. *See New Mexico v. General Elec. Co.*, 467 F.3d at 1246 ("the principle purpose of the saving clause located at 42 U.S.C. § 9652(d) "is to preserve to victims of toxic waste the other remedies they may have under federal or state law"); 42 U.S.C. § 9652(d) ("Nothing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants"). The restorative damages claims, while arising from the contamination from the Spill, seek to remedy injuries that are distinct from the injury to the River. *See New Mexico v. General Elec. Co.*, 467 F.3d at 1246, 1247-48 n.36 (indicating that tort theories of recovery may not be completely preempted for injuries that are "*separate and apart* from injury to the [resource]").

**IT IS ORDERED** that Weston Solutions, Inc.'s Motion for Summary Judgment to Dismiss the Navajo Nation's Tort Damage Claims as Preempted, Doc. 1478, filed March 7, 2022, is **GRANTED in part and DENIED in part** as follows:

(i) The Court grants Weston's Motion to the extent it seeks a judgment that the limitations on CERCLA natural resource damages apply to Indian tribes.

(ii) The Court denies Weston's Motion to the extent that it seeks a judgment that the Navajo Nation's restorative damages claims are preempted by CERCLA.

**WILLIAM P. JOHNSON**
**CHIEF UNITED STATES DISTRICT JUDGE**